IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Joseph Matthew Smith, | ) | C/A No.: 1:09-1482-TLW-SVH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Wendy Sharp, Nurse; James Kay, Doctor;[1] W.F. McFadden, Doctor; R.L. Neville, Doctor; John Ozmint, | ) | |
| Defendants. | ) | |

Plaintiff Joseph Matthew Smith ("Smith") filed this pro se civil rights action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. Defendants include (1) the South Carolina Department of Corrections ("SCDC"), Director Jon Ozmint[2] and (2) four SCDC medical personnel–Sharp, Kay, McFadden, and Neville (collectively referred to as the "Medical Defendants"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Smith's motion for summary judgment [Entry #22], and the defendants' motions for summary judgment [Entry # 24 and #36]. Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Smith was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motions.

---

[1] The docket shows that Defendant Kay died prior to the commencement of this action. Thus, it appears that the proper party would be Defendant Kay's estate, which was never served.

[2] Based on a review of the filings, the correct spelling of Defendant "John Ozmint" is "Jon Ozmint."

[Entry #25 and #37]. Smith responded. [Entry #39 and #40]. Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motions should be granted and Smith's motion should be denied.

I.  RELEVANT BACKGROUND

Viewed in the light most favorable to the plaintiff, the following facts are relevant to the resolution of the pending motions. This matter arises out of an injury that Smith received on July 21, 2007 and the medical treatment he received thereafter.

Smith's Complaint alleges that on July 21, 2007, while working in the kitchen at Turbeville Correctional Institution ("TCI"), he sustained burns on his arms, legs, feet, stomach, and buttocks when a container containing a boiling water solution spilled on him. Smith states that he was immediately rushed to the prison medical unit and that he was in severe pain. Smith alleges that Defendant Sharp treated him with cream and bandages, which were insufficient for his injuries. Smith states that the officers on duty inquired as to why Smith was not being transported to the emergency room and contacted the Warden of TCI with their concerns. Smith contends that the Warden responded that, pursuant to SCDC policy, he could not override the decision of medical staff. Smith alleges that Defendant Sharp then contacted Defendant Kay, the on-call physician, who concurred with Defendant Sharp's decision. Smith states that he was denied placement in the TCI infirmary and returned to his unit.

Smith alleges that his condition deteriorated and that on July 24, 2007, he was transferred to the infirmary at Kirkland Correctional Institution ("KCI"). Smith remained

in the infirmary for ten days and then was transported to the Joseph M. Still Burn Center ("Burn Center") in Georgia for treatment. Smith states that his burns were infected and that he required skin grafts. Smith states that at the time he filed his Complaint, he had undergone five surgeries to treat his injuries and that further surgeries may be necessary.

Smith alleges that the defendants violated his constitutional rights by failing to provide him adequate medical treatment for approximately fourteen days—the time from when he was burned through the date that he was transferred to the Burn Center. He further argues that SCDC policy contributed to the denial of adequate medical care.[3] Smith seeks monetary damages for his alleged injuries and also requests injunctive relief in the form of modification of current SCDC policies to allow SCDC staff to override medical staff decisions. (See generally Compl., Docket Entry 1.)

In support of their motion for summary judgment, the Medical Defendants have submitted the affidavit of Donna Curry, an administrative specialist within SCDC; Smith's SCDC medical record entries; and SCDC medical staffs' handwritten notes and records from July 21, 2007 through August 31, 2007 for Smith. In reply, the Medical Defendants also submitted the affidavits of Defendant Neville and Defendant Sharp. Essentially, the affidavits and medical records provide additional information concerning the medical care that Smith received immediately after the July 21, 2007 incident.

---

[3] To the extent that the defendants' motions address other claims which they conjecture that Smith may be attempting to assert, the court finds that such claims do not meet the applicable pleading standard and are not properly before the court. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

II.    DISCUSSION

   A.   Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a

potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

    B.    Deliberate Indifference Generally

Deliberate indifference by prison personnel to a prisoner's medical needs is actionable under § 1983 pursuant to the Eighth Amendment to the United States Constitution. See Estelle v. Gamble, 429 U.S. 97, 104-105 (1976). To establish a claim under the Eighth Amendment, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks & citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

  C. Medical Defendants

    1. Exhaustion of Administrative Remedies

The Medical Defendants contend that they are entitled to summary judgment on Smith's claims because Smith has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See Booth v. Churner, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Pursuant to SCDC policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance."

It is undisputed in this matter that Smith sought no administrative action. Rather, Smith alleges that due to the severity of his injuries, he was precluded from timely filing a grievance. (Docket Entry 40 at 5.) However, this argument does not avail Smith in light

of the uncontroverted evidence of record that shows that there were procedures available for prisoners in Smith's situation. Mary Coleman, the Branch Chief of Inmate Grievances with SCDC, attests that staff assistance is available to provide access to the grievance system for disabled inmates. (Coleman Aff. ¶ 3, Docket Entry 42-1.) Coleman further avers that while inmates are typically required to submit a Step 1 grievance within fifteen days of the alleged incident, one of the recognized exceptions to that limitations period is where an inmate shows "reasonable cause, i.e. [the] inmate [is] physically unable to initiate [a] grievance due to hospitalization." (Id. ¶ 4) (internal quotation marks and citation omitted). The only evidence of record shows that Smith never attempted to file grievances pertaining to his claim or avail himself of the administrative remedies offered by SCDC. Further, no evidence has been presented remotely suggesting that the defendants prevented him in any manner from filing grievances. Cf. Hill v. Haynes, No. 08-7244, 2010 WL 2182477 (4th Cir. June 2, 2010) (unpublished). Therefore, the court recommends that the Medical Defendants be granted summary judgment on Smith's claims based on Smith's failure to exhaust his administrative remedies.

      2.     Medical Claims

Moreover, even if Smith had properly exhausted his claims, the Medical Defendants would be entitled to summary judgment.

Smith's medical records reveal that Smith received continuous medical treatment after he was burned. The medical records state that on Saturday, July 21, 2007, medical personnel received a telephone call indicating that an inmate in the cafeteria had been

burned with hot water and instructions were given to apply cold water or ice to the inmate and to immediately transport the inmate to the medical unit. (Entry 36-3 at 33.) Smith was escorted to the medical unit where he explained that hot water spilled on him and stated that "I'm burning."[4] (Id. at 31.) The medical record provides a detailed description of Smith's injuries, indicating the appearance of the areas of Smith's body that were exposed to the hot water, such as the existence, size, and status of blisters and the coloration of the skin. The records indicate that Defendant Sharp contacted Dr. Patel (as opposed to Defendant Kay as alleged by Smith) who instructed Defendant Sharp on the treatment course, including the immediate administration of several medications and burn cream. Defendant Sharp scheduled an appointment for Smith to be seen by a medical doctor on Monday, July 23, 2007; issued Smith a wheelchair; and informed the shift captain and associate warden of Smith's condition. Smith was assisted back to his dorm and Defendant Sharp noted: "WILL FOLLOW CLOSELY." (Id. at 32.)

The medical records further reveal that Smith received medical treatment twice the following day, consisting of dressing changes, application of medication, inspection of his wounds, and instructions on care. (Id. at 31.) On July 23, 2007, Defendant Kay examined and treated Smith's wounds. Later that day, Smith returned to the medical unit to have his dressings changed and complained that he was hot and uncomfortable. Smith received additional treatment and monitoring. That evening, Smith's dressings were

---

[4] A late medical entry indicates that upon arriving in the medical unit, Smith was also provided with a cold shower for approximately twenty to twenty-five minutes and was patted dry. (Id. at 30.)

changed again.  On July 24, 2007, Smith's wounds were treated and his bandages were changed, and he was transported to the KCI infirmary.  (Id. at 29.)

At the KCI infirmary, Smith continued to receive medical treatment from several KCI doctors and medical staff, including Defendants McFadden and Neville.  (See Medical Notes, Docket Entries 22-2 at 1, 36-4 at 5, 11, & 28-1 at 1-3; Neville Aff. ¶¶ 6-9, Docket Entry 41-1 at 2-3.)  This treatment included continuous cleaning of his wounds, application of burn cream, showers twice daily, prescription of additional medications, and scheduling an appointment at the Burn Center.  (See  Neville Aff. ¶¶ 7-8, Docket Entry 41-1 at 2-3; Medical Notes, Docket Entry 41-1 at 6-11.)  The medical records indicate that on July 26, 2007 Smith's wounds were not infected.  (Docket Entry  22-2.)  The medical notes repeatedly indicate that during his treatment in KCI infirmary, Smith was "doing well" and was without fever.  (Docket Entry 41-1 at 6.)  Smith remained in KCI infirmary until his appointment at the Burn Center on August 3, 2007.  (Neville Aff. ¶ 7, Docket Entry 41-1 at 2.)

Smith argues that summary judgment is precluded at this time because the defendants have failed to respond to his interrogatories dated September 25, 2009.  The docket shows that the scheduling order issued in this case required discovery requests to be served in time for the responses to be served no later than September 29, 2009 and additional time was not requested by either of the parties.  (Docket Entry 13.)  Therefore, this argument does not avail Smith.

Smith also asserts that there are material issues of genuine fact which preclude summary judgment. However, the alleged factual disputes consist of Smith's conclusory assertions that he disputes the accuracy of the medical records because they do not support the severity of his injuries and that he "rejects the assertion" that the Burn Center did not initially have bed space for him.[5]  (Pl.'s Mem. Opp'n Med. Defs.' Mot. Summ. J. at 2-3, Docket Entry 40 at 2-3.)  These unsupported statements are insufficient to create genuine issues of material fact.  See Fed. R. Civ. P. 56(e).

In support of Smith's argument that the defendants were deliberately indifferent to his medical needs, Smith contends that because of the severity of the burns he received, he should have immediately been transferred to an emergency room or a burn center. However, he provides no medical support for this contention.  Smith acknowledges that he received medical treatment from the defendants; however, he asserts that it was grossly inadequate.  Stated differently, Smith's argument is based on the fact that he believes that he was not treated as aggressively or as quickly as he believed appropriate under the circumstances.  Such disagreement fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact.  See Nelson, 603 F.3d at 449; see also O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In

---

[5] Smith further objects to the Medical Defendants' statements that he pulled the hot water onto himself and caused himself to be injured.  However, the court has not interpreted the Medical Defendants's statements to indicate in any manner that Smith purposely injured himself.

the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

As stated above, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Farmer, 511 U.S. at 847; Parrish, 372 F.3d at 302. The evidence presented indicates that the defendants provided Smith immediate and continuous medical care after he was burned, and there is no evidence that the defendants intentionally disregarded a substantial risk of harm. Smith cannot show that his treatment was "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851. Moreover, even accepting Smith's assertions regarding the appropriate treatment of his burn injury as true, his Complaint at most states a claim of negligence or medical malpractice, which is not actionable under § 1983. See Estelle, 429 U.S. at 105-106 (indicating that claims alleging "an inadvertent failure to provide adequate medical care," or asserting negligence, are insufficient to constitute a constitutional deprivation and stating that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); Pink v.

Lester, 52 F.3d 73 (4th Cir. 1995) (stating that Daniels v. Williams, 474 U.S. 327 (1986), bars an action under § 1983 for negligent conduct); see also Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (indicating that errors in judgment and simple mistakes are insufficient to rise to the level of deliberate indifference). Accordingly, based on the evidence presented, no reasonable jury could find that the Medical Defendants were deliberately indifferent to Smith's serious medical needs.

    D.    Defendant Ozmint

        1.    Medical Claims

Smith's deliberate indifference claim against Defendant Ozmint fails for several reasons. First, Smith has failed to identify any personal involvement by Defendant Ozmint with regard to his medical treatment. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Mere knowledge is not sufficient to establish personal participation. Id. The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). A claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948. As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases,

"the term 'supervisory liability' is a misnomer." Id. at 1949. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." Id. at 1957 (Souter, J., dissenting).[6]

Further, Defendant Ozmint is a non-medical prison official. To establish a claim for denial of medical care against non-medical personnel, Smith must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the prisoner. See id.

In this case, there is no indication or allegation that Defendant Ozmint took any action or even had any knowledge regarding Smith's medical care. To the extent that Smith's claim rests on an assertion that Defendant Ozmint is responsible for creating a policy that deprives the warden or SCDC staff from overriding decisions by medical staff, such a claim fails for the same reasons stated above, as Smith cannot show on this record

---

[6] The court notes that even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates).

that such a policy, even if it existed, resulted in a constitutional violation. Therefore, Smith has failed to demonstrate that Defendant Ozmint was deliberately indifferent to his medical needs.

E. Eleventh Amendment Immunity

To the extent the defendants are sued in their official capacities, they correctly assert that they are immune from suit in this court. As arms of the state, they are entitled to sovereign immunity and are not "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989). Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e).

F. Qualified Immunity

Additionally, the defendants are entitled to qualified immunity. Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). To resolve a qualified immunity defense, the court must determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and whether

the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009). Because Smith has failed to establish that he was deprived of a constitutional right, the defendants are entitled to qualified immunity.

III.  CONCLUSION

For the foregoing reasons, the undersigned finds that Smith has failed to demonstrate that the defendants were deliberately indifferent to his medical needs. Therefore, Smith's claims pursuant to § 1983 fail as a matter of law. It therefore follows that any claim Smith asserts under §§ 1985 and 1986 also fails as a matter of law. The court recommends that Defendants' motions for summary judgment [Entry #24 and #36] be granted and Smith's motion for summary judgment be denied [Entry #22].

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 23, 2010  
Florence, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**